# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

VERONICA BAXTER, as Personal Representative
of the ESTATE OF ANGELO J. CROOMS,
Deceased,

AL-QUAN PIERCE, as Personal Representative
of the ESTATE OF SINCERE PIERCE,
Deceased,

       Plaintiffs,

    v.

JAFET SANTIAGO-MIRANDA, individually
and as an agent of BREVARD COUNTY
SHERIFF'S OFFICE;
CARSON HENDREN, individually
and as an agent of BREVARD COUNTY
SHERIFF'S OFFICE; and WAYNE IVEY, in his
official capacity as BREVARD
COUNTY SHERIFF,

       Defendants.

**<u>DEMAND FOR JURY TRIAL</u>**

---

## COMPLAINT

---

Plaintiff Veronica Baxter, as Personal Representative of the Estate of Angelo J. Crooms, Deceased, and Plaintiff Al-Quan Pierce, as Personal Representative of the Estate of Sincere Pierce, Deceased, by and through counsel, Ben Crump Law, The Law Office of Natalie Jackson, and Hart McLaughlin & Eldridge, LLC, complain as follows against Defendants Jafet Santiago-Miranda, individually and as an agent of Brevard County Sheriff's Office; Carson Hendren, individually and as an agent of Brevard County Sheriff's Office; and Wayne Ivey, in his official capacity as Brevard County Sheriff:

## NATURE OF THE ACTION

1.      On November 13, 2020, 16-year old Angelo J. ("A.J.") Crooms and 18 year-old Sincere Pierce were frightened young occupants of a car when they were shot to death without justification by Defendant Jafet Santiago-Miranda, a uniformed Brevard County Sheriff's Deputy.

2.      A.J. Crooms and Sincere Pierce were both African-American teenagers. They had done nothing to justify a police encounter, let alone paying for it with their lives. Both were unjustifiably murdered by the very sovereign authority that took an oath to protect them.

3.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of the rights of their sons, as secured by the United States Constitution and the common law of the State of Florida.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the federal questions at issue pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Middle District of Florida, Orlando Division. Moreover, all of the parties reside in the Middle District of Florida, Orlando Division.

## THE PARTIES

6.      Plaintiff Veronica Baxter is the aunt of decedent A.J. Crooms and has been appointed personal representative of A.J. Crooms' estate. Veronica Baxter is a citizen of the United State and a resident of the State of Florida. Veronica Baxter sues on behalf of A.J. Crooms' estate and his survivors. AJ Crooms' survivors are his parents, Tasha Strachan (mother) and Eric Smith (father). AJ Crooms' parents are citizens of the United States and residents of the State of Florida.

7.      Plaintiff Al-Quan Pierce is the uncle of decedent Sincere Pierce and has petitioned to be the appointed personal representative of Sincere Pierce's estate. Al-Quan Pierce is a citizen of the United States and a resident of the State of Texas. Al-Quan Pierce sues on behalf of Sincere Pierce's estate and his survivors. Sincere Pierce's survivors are his parents, Quashada Pierce (mother) and George Taylor (father). Sincere Pierce's parents are citizens of the United States and residents of the State of Florida.

8.      Defendant Jafet Santiago-Miranda is a citizen of the State of Florida and was at all relevant times a Deputy with the Brevard County Sheriff's Office.

9.      Defendant Carson Hendren is a citizen of the State of Florida and was at all relevant times a Deputy with the Brevard County Sheriff's Office.

10.     Defendant Wayne Ivey is a citizen of the State of Florida and was at all relevant times the Sheriff of Brevard County. The Brevard County Sheriff's Office is a governmental subdivision that is organized and existing under the laws of the State of Florida and located in Brevard County, Florida. As Sheriff, Wayne Ivey is responsible for setting the policies and procedures of the Brevard County Sheriff's Office. He is also responsible for the hiring, retention, training, and supervision of his deputies. Wayne Ivey is sued in his official capacity.

## FACTS APPLICABLE TO ALL COUNTS

### I.    A.J. Crooms and Sincere Pierce Were Shot and Killed Despite Presenting No Threat of Harm

11.     On November 13, 2020, sometime shortly before or around 10:30 a.m., Brevard County Sheriff's Deputies Jafet Santiago-Miranda and Carson Hendren were each driving police cruisers in Sincere Pierce's neighborhood within Cocoa, Florida, when they began following a car occupied by A.J. Crooms, Sincere Pierce, and a third passenger ("Decedents' vehicle"), which was driving north on Exeter Drive.

3

12.     Decedents' vehicle turned left onto Ivy Drive, heading west, and Deputies Santiago-Miranda and Hendren continued to follow it.

13.     Decedents' vehicle obeyed all traffic laws and was not speeding, driving erratically, or displaying any other suspicious or concerning behavior whatsoever.

14.     After traveling one block west on Ivy Drive, Decedents' vehicle turned left (south) onto Stetson Drive South, and then turned right into the first driveway on the street (1302 Stetson Drive South) to turn around and head back the other direction.

15.     However, Deputies Santiago-Miranda and Hendren had stopped their police cruisers at the intersection of Stetson Drive South and Ivy Drive, blocking Decedents' vehicle from heading back north on Stetson Drive South.

16.     Neither Deputy Santiago-Miranda nor Deputy Hendren activated their sirens. Deputy Hendren did not activate her police cruiser lights. On information and belief, Deputy Santiago-Miranda activated his police cruiser lights at or just prior to the time he stopped his cruiser.

17.     Neither Santiago-Miranda nor Hendren had reasonable articulable suspicion or probable cause sufficient to stop Decedent's vehicle. Decedent's vehicle did not violate any traffic laws and the deputies did not have probable cause to believe that a crime had been committed or that the occupants of Decedents' vehicle were engaged in criminal activity. Indeed, the deputies never even tried to effectuate a traffic stop on Decedents' vehicle.

18.     Instead, while Decedents' vehicle was still in the driveway of 1302 Stetson Drive South and was backing up to turn around, both Deputies Santiago-Miranda and Hendren suddenly and without provocation or any lawful basis exited their police cruisers, drew their firearms, and aimed them at Decedents' vehicle. The deputies did not have reasonable articulable suspicion or probable cause to justify drawing their guns and pointing them at the occupants of Decedents' vehicle. Their doing so needlessly escalated the situation in violation of policing best practices.

4

19.     Decedents and the third passenger, all young black men or teenagers, were seriously and understandably frightened by the deputies' behavior. More specifically, as three young black men or teenagers who had heard about and bore witness to many incidents of excessive force and unjustified shootings of minorities by the police in recent months and years, they were terrified for their lives because, even though they had done nothing wrong and were minding their own business, two sheriff's deputies had them cornered with their guns drawn and pointed at them.

20.     Scared and panicked, Decedents' vehicle attempted to slowly avoid the deputies. After gradually backing out of the driveway, Decedents' vehicle slowly turned its tires all the way to the right, towards the front yard of the home directly across the street (1301 Stetson Drive South). They intended to drive through the front yard across the street to get back to Ivy Drive and away from the life-threatening, unjustified force posed by the deputies blocking the road. This event is not up for debate; it was captured on a video recording.

21.     As Decedents' vehicle maneuvered slowly towards the yard, Deputy Hendren backed away behind her police cruiser to an area of cover. Deputy Santiago-Miranda took an entirely different approach—aggressive and hostile—and pointed his firearm at Decedents' vehicle and its occupants and did not take any position of cover. Deputy Santiago-Miranda intentionally and purposefully escalated the situation, and did nothing to de-escalate it.

22.     As Decedents' vehicle continued to very slowly maneuver toward the front yard of 1301 Stetson Drive South, Deputy Santiago-Miranda affirmatively stepped further toward Decedents' vehicle and continued pointing his firearm at Decedents' vehicle and the occupants inside. Deputy Hendren continued to stand behind her cruiser and said nothing to Deputy Santiago-Miranda, despite the fact that he was actively trying to engage Decedents' vehicle with his weapon drawn and despite the fact that she could see the vehicle posed no threat of harm to anyone, including Santiago-Miranda.

23.     Decedents' vehicle continued to try to get away and avoid the lethal confrontation by slowly turning, with its tires turned all the way to the right, towards the yard and away from Deputy Santiago-Miranda. As the Decedents' vehicle slowly moved forward in an attempt to drive through the yard and away from Deputy Santiago-Miranda, Santiago-Miranda actively stepped toward the vehicle and, within a mere second of the vehicle's slow movement away from him to the yard, began firing his weapon repeatedly and recklessly into Decedents' vehicle. Deputy Hendren stood by and watched without attempting to instruct Santiago-Miranda to stop and/or without attempting to intervene in any way despite the fact that she could see the vehicle posed no threat of harm to anyone, including Santiago-Miranda.

24.     In total, Defendant Santiago-Miranda fired 11 bullets into Decedents' vehicle as it drove slowly past and away from him, riddling the young A.J. Crooms and Sincere Pierce with bullets, and killing the two teenagers. The bullets penetrated the front windshield, the driver's side front window, and the driver's side back window.

25.     At all times, Decedents' vehicle posed absolutely no threat of harm to Deputy Santiago-Miranda, Deputy Hendren, or any other person.

26.     Deputy Santiago-Miranda did not reasonably or credibly fear for his or anyone else's safety which would justify the use of deadly force. On information and belief, Deputy Hendren did not discharge her firearm.

## II.     The Deputies Failed to Render Emergency Aid

27.     Upon information and belief, A.J. Crooms and Sincere Pierce did not die immediately. Instead, they struggled for their lives inside the vehicle after being shot by Deputy Santiago-Miranda.

28.     Brevard County Sheriff's Office policy expressly requires that, after the use of deadly force, deputies must "provide for appropriate medical aid, to include emergency medical services response, once the subject is restrained and no longer a threat to himself/herself or others[.]"

29.     Accordingly here, Brevard County Sheriff's Office policy specifically required Defendants Santiago-Miranda and Hendren to render emergency aid to Mr. Crooms and Mr. Pierce immediately.

30.     Nonetheless, upon information and belief, Defendants Santiago-Miranda and Hendren did not render aid to Mr. Crooms or Mr. Pierce. Both struggled for their lives as they waited for emergency assistance to arrive.

### III.     The Brevard County Sheriff's Office Use of Force Policy Differs Materially from the National Consensus Policy, Violates Best Practices for Law Enforcement, and Violates the Constitutional Rights of Citizens

31.     The Brevard County Sherriff's Office's Use of Force Policy falls far short of policies from national consensus publications and the policies of comparable governmental agencies. The difference between Brevard County's policy and the others exposes Brevard County's policy as the moving force behind Santiago-Miranda's aggressive, violent, and unjustified actions. Specifically, unlike other relevant policies, Brevard County's does not instruct its deputies to avoid engaging moving vehicles or to move out of the path of a moving vehicle before using deadly force.

32.     For example, the National Consensus Policy on Use of Force specifically provides (and provided at the time of the incident here) that: "Firearms shall not be discharged at a moving vehicle unless (1) a person in the vehicle is threatening the officer or another person with deadly force by means other than the vehicle; or (2) the vehicle is operated in a manner deliberately intended to strike an officer or another person, ***and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.***" (Emphasis added.) This policy was published as a result of collaboration among 11 of the most significant law enforcement and leadership and labor organizations in the United States, including the Fraternal Order of Police, the Federal Law Enforcement Officers Association, and International Association of Chiefs of Police, among others.

33.     Other prominent law enforcement agencies throughout Florida similarly require personnel to exhaust other reasonable means of defense—including moving out of the path of the vehicle—before using deadly force.

34.     For example, the Miami-Dade County Use of Force Policy provides: "Police officers are prohibited from discharging their firearms at a moving vehicle unless a person in the vehicle is imminently threatening the officer or another person with deadly force by means other than the vehicle itself." The policy continues by stating in pertinent part: "(a) Police officers shall not intentionally place themselves in the path of a moving vehicle when attempting to approach, pursue, and/or stop a moving vehicle. (b) Physically being in the path of a moving vehicle shall not be justification for discharging a firearm at the vehicle or any of its occupants. (c) An officer in the path of an approaching vehicle shall move to a position of safety rather than discharging a firearm at the vehicle or at any of the occupants of the vehicle."

35.     Similarly, the Broward County (Florida) Sheriff's Office's Use of Force policy states: (a) "Deputies will not intentionally place themselves in the path of a moving vehicle or in a position where they are the sole obstruction to vehicle movement." (b) "The moving vehicle itself shall not presumptively constitute a threat that justifies a deputy use of deadly force." (c) "When confronted by a moving vehicle, deputies will make every attempt to move out of a vehicle's path, rather than discharge their firearm or any other weapon at the oncoming vehicle."

36.     The Monroe County (Florida) Sheriff's Office Use of Force policy also expressly states: "Deputies will not intentionally place themselves in the path of an oncoming vehicle. . . . When confronting an oncoming vehicle, deputies will make every attempt to move out of the vehicle's path, rather than discharge their weapon at the oncoming vehicle."

37.     Nearby Volusia County's Sheriff's Office Use of Force Policy likewise provides: "(1) A moving vehicle alone shall not presumptively constitute a threat that justifies a Deputy's use of

deadly force. (2) Deputies shall not move into or remain in the path of a moving vehicle. Moving into or remaining in the path of a moving vehicle, whether deliberate or inadvertent, may not be sufficient justification for discharging a firearm at the vehicle or any of its occupants. A Deputy in the path of an approaching vehicle shall attempt to move to a position of safety when at all possible, rather than discharging a firearm at the vehicle or any of the occupants of the vehicle."

38.    The Brevard County Sheriff's Office's policy, on the other hand, authorizes (and authorized at the time of the incident here) use of deadly force when: "A deputy has an objectively reasonable belief a subject is trying to drive a vehicle into a deputy or another person, which would cause great bodily injury or death." Unlike the National Consensus Policy and the policies of several other major counties in Florida, the Brevard County Sheriff's Office's policy does ***not*** require the deputy to use other reasonable means of defense short of deadly force, including moving out of the path of the vehicle.

39.    Upon information and belief, the Brevard County Sheriff's Office does not train deputies, and did not train Deputy Santiago-Miranda, to use such other means of defense, including moving out of the path of the vehicle, before using deadly force on the occupants of a moving vehicle. Accordingly, the Brevard County Sheriff's Office's policy calls for deadly force on the occupants of moving vehicles even when the officer can move out of the way of the vehicle and the vehicle and occupants pose no threat of harm to the deputy or anyone else.

### IV.    Brevard County Sheriff Wayne Ivey Fosters a Culture of Recklessness Embodied in his "Wheel of Fugitives" Program

40.    The Brevard County Sheriff's Office's failures do not end with its use of force policy. Brevard County Sheriff Wayne Ivey has fostered a culture of flippancy and recklessness regarding the citizens it is charged with protecting and pursuing.

41.    Sheriff Ivey can be seen regularly hosting his self-styled "Wheel of Fugitives" program, available on the internet through the Sheriff's Office's website or through YouTube. The program is

a parody of the popular "Wheel of Fortune" television show. In it, after opening music accompanied by jubilant chants of "Wheel!" "Of!" Fugitives!" is played, Sheriff Ivey welcomes viewers and introduces them to his "Wheel of Fugitives." The wheel contains the photo and name of a fugitive on each spoke (instead of the dollar amounts ordinarily seen on the popular television gameshow). Sheriff Ivey then gives the wheel a spin.

42.     The videos poke fun at the citizens depicted as "fugitives." In one episode dedicated by Sheriff Ivey to the "ladies," Kool and the Gang's "Ladies Night" plays sportively as the video shuffles through photos of female fugitives. Sheriff Ivey visibly enjoys his role as carnival barker, joking at one point that if the fugitives turn themselves in, he will find them a "nice, warm cell" in his jail. A screenshot from that episode reveals the kind of unprofessionalism and disrespect on display:



43.     A recent investigation by Florida Today of a year's worth of episodes of "Wheel of Fugitives," identified 60 individuals who were incorrectly featured across 45 episodes on the wheel between Feb 25, 2020, and Feb 23, 2021. Out of the 45 episodes, all but four included at least one

non-fugitive. In the Nov 3, 2020, edition, seven out of the 10 identified were either already in jail, had been released, or had no active arrest warrant at the time.

44.     The public statements and actions here evince a disregard for the seriousness of law enforcement as well as the sanctity of the lives of those the Sheriff's Office is charged with protecting or pursuing.

## V.     Deputy Santiago-Miranda Had An Alarming and Disqualifying Criminal History

45.     Tragically, Deputy Santiago-Miranda's unprovoked and unjustified killing of A.J. Crooms and Sincere Pierce was foreseeable. Santiago-Miranda had a long history of violent and criminal activity, including multiple especially alarming events that occurred only months before his reckless killing of these two teenagers. Santiago-Miranda's actions were so alarming that the Brevard County Sheriff's Office concluded he had intentionally "engaged in a course of behavior that is unacceptable for a deputy sheriff." He should have been disqualified from a career in law enforcement and was a danger to society.

46.     In December 2007, before he was hired by the Brevard County Sheriff's Office, Santiago-Miranda was an accomplice and/or active participant in an attempted burglary and armed robbery. The event occurred after Santiago-Miranda's acquaintance left a message with a man to the effect that he would make the man's family "disappear" if the man did not pay him $250.00 he claimed to be owed. Santiago-Miranda, armed with a Glock pistol, drove his acquaintance to the man's home for the purpose of forcibly and violently taking the man's money.

47.     Fortunately, upon Santiago-Miranda and his accomplice's arrival at the home, the Osceola County Sheriff's Office was waiting and promptly arrested them. Santiago-Miranda was charged with Burglary of an Occupied Dwelling with an Assault Therein, F.S.S. 810.02(2A), and Possession of a Firearm While in the Commission of a Felony, F.S.S. 790.07(2).

48.     According to Osceola County court records no longer available, in or around July 2008, Santiago-Miranda was convicted of Burglary to a Dwelling Unarmed in violation of F.S.S. 810.02 (3A) and Aggravated Assault with a Firearm in violation of F.S.S. 784.021 (1A)—both felonies under Florida law.

49.     Despite Santiago-Miranda's unhinged, violent, lawless, and criminal past behavior, the Brevard County Sheriff's Office hired him as a Sheriff's Deputy and equipped him with a firearm.

50.     The Brevard County Sheriff's Office knew or should have known of Santiago-Miranda's prior disqualifying, unhinged, violent, lawless, and criminal behavior when it hired him.

51.     Santiago-Miranda did not change after he was hired by the Brevard County Sheriff's Office. Predictably, Santiago-Miranda continued his lawless behavior, empowered by the force of a badge and use of a government-issued firearm.

52.     On or about August 18, 2019, in anger over a suspected affair his wife was having with another man, Santiago-Miranda deflated his wife's vehicle's tires and stole an AR-15 rifle from her that he had previously gifted her.

53.     Just a week later, on August 25, 2019, Santiago-Miranda confronted another man (a police officer) with whom he believed his wife to be having an affair. His wife and the man reported that, during the heated confrontation, Santiago-Miranda reached toward his hip as if to draw his firearm against the man. Santiago-Miranda's wife was so alarmed that she grabbed Santiago-Miranda's gun and holster off his hip and ran away with it to prevent him from doing harm the man. Audio from the incident confirms that the man warned Santiago-Miranda not "to ever grab your gun again." The man also reported to police that "he was certain that if Deputy Santiago had been successful in drawing his firearm, he would have used it to shoot him."

54.     On or about February 17, 2020, Santiago-Miranda's wife was sitting in her vehicle with the same man from the August 25, 2019 incident when Santiago-Miranda approached. Santiago-

Miranda reached into the vehicle, took the keys from the ignition, and drove off stranding his wife. While driving away, Santiago-Miranda called 9-1-1, pretended to be an individual walking his dog and intentionally and falsely reported that he had witnessed a suspicious vehicle (his wife's) in which two people were engaged in lewd behavior. This prompted the Titusville Police Department to respond to the fabricated incident.

55.     Then just a few weeks later, in late February 2020, Santiago-Miranda, a former locksmith, intentionally damaged his wife's home by removing her apartment's front door handle and damaging her garage.

56.     Still further, on or about April 18, 2020, Santiago-Miranda made death threats concerning the man whom he confronted as having an affair with his wife on August 25, 2019. The Brevard County Sheriff's Office became aware of the death threats and placed Santiago-Miranda on paid administrative leave pending investigation.

57.     The very next day, on April 19, 2020, Santiago-Miranda was arrested and charged by the Cocoa Police Department for battering his wife in front of their minor child. Witness statements from the criminal incident stated that Santiago-Miranda grabbed his wife by the hair, held her hands behind her back, banged her head against a wall, and choked her until she could not breath. Santiago-Miranda did this all in front of his and his wife's daughter. As a result, the Cocoa Police Department arrested him and charged him with Battery/Domestic Violence in violation of F.S.S. 784.03 and Child Neglect in violation of F.S.S. 827.03(2)(a), a felony.

58.     On May 1, 2020, the Brevard County Sheriff's Office suspended Santiago-Miranda without pay.

59.     The State Attorney's Office ultimately decided not to prosecute Santiago-Miranda.

60.     Thereafter, the Brevard County Sheriff's Office conducted an investigation into Santiago-Miranda's repeatedly violent and alarming episodes. The investigation concluded that

Santiago-Miranda had violated several policies of the Office, including Section 300.03 Harassment, Section 400.00 General Professional Responsibilities, Section 400.04 Substandard Performance, and Section 400.06 Compliance with Law and Regulation. The investigative report concluded that Santiago-Miranda had "engaged in a pattern of conduct that was unbecoming of an officer and adversely affected the discipline, good order, or reputation of the Sheriff's Office and its employees;" that Santiago-Miranda had "failed to observe and obey state laws, rules and regulations of the Sheriff's Office;" and had "acted in a deliberate and willful manner that reflects a reckless or wanton disregard for safety or property . . . which results could have resulted in injury, danger, or damage to others and their property."

61.     On June 25, 2020, Chief Deputy Douglas Waller of the Brevard County Sheriff's Office authored a Final Action on the investigation into Santiago-Miranda, sustaining the above violations and finding that Santiago-Miranda "engaged in a course of behavior that is unacceptable for a deputy sheriff."

62.     Shockingly, however, upon issuing the Final Action on June 25, 2020, the Brevard County Sheriff's Office took no further action against Santiago-Miranda and immediately placed him, armed, back onto the streets of Brevard County. It failed to discipline Santiago-Miranda further, or retrain, supervise, and/or require any psychological counseling for Santiago-Miranda despite his outrageous, destructive, lawless, and violent pattern of behavior—a pattern which the Sheriff's Office knew had followed him well over a decade. Elected Brevard County Sheriff Wayne Ivey was aware of this and, on information and belief, authorized this decision, one which permitted Santiago-Miranda to wreak havoc and ultimately murder two young black teenagers under the color of law.

63.     Accordingly, Santiago-Miranda's temper, volatility, violence, lawlessness, recklessness, and fragile mental state were well known to the Brevard County Sheriff's Office in advance of Santiago-Miranda shooting and killing A.J. Crooms and Sincere Pierce on November 13, 2020.

64.     Given Santiago-Miranda's violent, criminal history and hostile disposition, he was ill-suited to hold, and should have been disqualified from holding, the position of sheriff's deputy, let alone be entrusted with a firearm and empowered by his badge. The Brevard County Sheriff's Office knew or should have known better.

## COUNT 1
### 42 U.S.C. § 1983 — Fourth Amendment and Fourteenth Amendments
### (Veronica Baxter on Behalf of A.J. Crooms Against Jafet Santiago-Miranda)

65.     Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

66.     The conduct of Deputy Santiago-Miranda constituted excessive force in violation of the U.S. Constitution.

67.     At all material times, Deputy Santiago-Miranda was acting under the color of state law as an agent and employee of the Brevard County Sheriff's Office.

68.     At all material times, Deputy Santiago-Miranda was wearing his official Brevard County Sheriff's Office uniform and was acting in the course and scope of his duties as a Brevard County Sheriff's Deputy at the time he shot and killed A.J. Crooms.

69.     At all material times, Deputy Santiago-Miranda had no reason to believe that he was in imminent danger or fear of imminent bodily harm from Decedents' vehicle or for any other reason.

70.     Every reasonable officer would have known that using deadly force on a vehicle slowly driving away and posing no threat of harm to anyone constitutes excessive force in violation of the Fourth Amendment of the U.S. Constitution.

71.     Every reasonable officer would have known that failing to render emergency aid to someone who poses no threat of harm and on whom the officer used lethal force violates the Fourth and Fourteenth Amendments of the U.S. Constitution.

72.     Deputy Santiago-Miranda's conduct was objectively unreasonable.

73.     As a result of Deputy Santiago-Miranda's excessive and unjustified use of force, 16-year old A.J. Crooms was shot, experienced severe pain and suffering and emotional distress, and died.

74.     As a direct and proximate result of these wrongful acts and omissions, Mr. Crooms' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

75.     The acts and omissions of Deputy Santiago-Miranda were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of A.J. Crooms.

WHEREFORE, Plaintiff Veronica Baxter, as impending Personal Representative of the Estate of Angelo J. Crooms, demands judgment against Defendant Jafet Santiago-Miranda for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 2
### Common Law Battery
### (Veronica Baxter on Behalf of A.J. Crooms Against Jafet Santiago-Miranda)

76.     Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

77.     Defendant Santiago-Miranda's conduct resulted in a harmful or offensive contact with A.J. Crooms' person.

78.     Defendant Santiago-Miranda's harmful or offensive contact with A.J. Crooms was intentional.

79.     Defendant Santiago-Miranda's harmful or offensive contact with A.J. Crooms was unjustified, unpermitted, and made without A.J. Crooms' consent.

80.     As a result of Defendant Santiago-Miranda's harmful or offensive contact with A.J. Crooms, A.J. Crooms was shot, experienced severe pain and suffering and emotional distress, and died.

81.     As a direct and proximate result of these wrongful acts and omissions, Mr. Crooms' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

82.     The acts and omissions of Defendant Santiago-Miranda were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of A.J. Crooms.

WHEREFORE, Plaintiff Veronica Baxter, as impending Administrator of the Estate of Angelo J. Crooms, demands judgment against Defendant Jafet Santiago-Miranda for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 3
### 42 U.S.C. § 1983 — Fourth Amendment and Fourteenth Amendment
### (Veronica Baxter on Behalf of A.J. Crooms Against Carson Hendren)

83.     Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

84.     The conduct of Deputy Carson Hendren violated the U.S. Constitution.

85.     At all material times, Deputy Hendren was acting under the color of state law as an agent and employee of the Brevard County Sheriff's Office.

86.     At all material times, Deputy Hendren was wearing her official Brevard County Sheriff's Office uniform and was acting in the course and scope of her duties as a Brevard County Sheriff's Deputy at the time she stood by while Santiago-Miranda shot and killed A.J. Crooms.

17

87.     At all material times, Deputy Hendren had no reason to believe that she or Santiago-Miranda were in imminent danger or fear of imminent bodily harm from Decedents' vehicle or for any other reason.

88.     Every reasonable officer would have known that using deadly force on a vehicle slowly driving away and posing no threat of harm to anyone constitutes excessive force in violation of the U.S. Constitution.

89.     Every reasonable officer would have known that failing to intervene with respect to her fellow officer's use of deadly force on a vehicle slowly driving away and posing no threat of harm to anyone violates the U.S. Constitution

90.     Deputy Hendren recognized that the force threatened and being used by Santiago-Miranda was excessive and unreasonable under the circumstances.

91.     Deputy Hendren observed and was in a position to intervene to stop Santiago-Miranda's use of excessive and unreasonable deadly force against A.J. Crooms.

92.     Every reasonable officer would have known that failing to render emergency aid to someone who poses no threat of harm and on whom a fellow officer had used lethal force violates the Fourth and Fourteenth Amendments of the U.S. Constitution.

93.     Deputy Hendren's conduct was objectively unreasonable.

94.     As a result of Deputy Hendren's conduct, 16-year old A.J. Crooms was shot, experienced severe pain and suffering and emotional distress, and died.

95.     As a direct and proximate result of these wrongful acts and omissions, Mr. Crooms' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

96.     The acts and omissions of Deputy Hendren were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of A.J. Crooms.

WHEREFORE, Plaintiff Veronica Baxter, as impending Administrator of the Estate of Angelo J. Crooms, demands judgment against Defendant Carson Hendren for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

**COUNT 4**
**42 U.S.C. § 1983 (*Monell*) — Deliberate Indifference in Training**
**(Veronica Baxter on Behalf of A.J. Crooms Against Brevard County Sheriff's Office)**

97.     Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

98.     The Brevard County Sheriff's Office inadequately trained Deputy Santiago-Miranda such that he was utterly incapable of performing the job of a Sheriff's Deputy on November 13, 2020, including by following and attempting to seize Decedents' vehicle when it had exhibited no reason for such seizure and then shooting and killing A.J. Crooms and Sincere Pierce despite the fact that they posed no threat to Santiago-Miranda or anyone else at any time.

99.     The Brevard County Sheriff's Office inadequately trained Deputy Hendren such that she was utterly incapable of performing the job of a Sheriff's Deputy on November 13, 2020, including by following and attempting to seize Decedents' vehicle when it had exhibited no reason for such seizure and then standing by and doing nothing while Santiago-Miranda shot and killed A.J. Crooms and Sincere Pierce despite the fact that they posed no threat to Santiago-Miranda or anyone else at any time.

100.    The Brevard County Sheriff's Office has a policy, pattern, and practice of inadequately training sheriff's deputies to perform the job, including by inadequately training them on proper use

19

of force. Indeed, the Brevard County Sheriff's Office's use of force policy did not require Deputy Santiago-Miranda to use other reasonable means of defense short of deadly force, including moving out of the path of the vehicle. Further, the Brevard County Sheriff's Office does not train deputies, and did not train Deputy Santiago-Miranda, to use other means of defense, including moving out of the path of the vehicle, before using deadly force on the occupants of a moving vehicle. Accordingly, the Brevard County Sheriff's Office's policy and training calls for deadly force on the occupants of moving vehicles even when deputies can move out of the way of the vehicle and the vehicle and occupants pose no threat of harm to the deputy or anyone else.

101.   These same training failures explain why Deputy Hendren did nothing to intervene in Santiago-Miranda's use of lethal force when no threat was posed.

102.   The Brevard County Sheriff's Office also has a policy, pattern, and practice or custom of inadequately re-training sheriff's deputies on use of force after they have been placed on administrative leave for exhibiting violent behavior, just as Santiago-Miranda received no such training here.

103.   The Brevard County Sheriff's Office's failure to adequately train in these respects constituted a deliberate indifference to the constitutional rights of citizens like A.J. Crooms.

104.   As a result of the Brevard County Sheriff's Office's failure to adequately train in these respects, A.J. Crooms was shot, suffered severe pain and suffering and emotional distress, and died.

105.   As a direct and proximate result of the policies, patterns, practices, and/or customs of the Brevard County Sheriff's Office, Mr. Crooms' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

106.    The Brevard County Sheriff's Office acted under the color of state law to deprive A.J. Crooms of his rights under the U.S. Constitution. As such, the Brevard County Sheriff's Office has violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Veronica Baxter, as impending Administrator of the Estate of Angelo J. Crooms, demands judgment against Defendant Brevard County Sheriff's Office for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

### COUNT 5
**42 U.S.C. § 1983 (*Monell*) — Deliberate Indifference in Retention**
**(Veronica Baxter on Behalf of A.J. Crooms Against Brevard County Sheriff's Office)**

107.    Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

108.    While a Brevard County Sheriff's Deputy in 2019 and 2020, Defendant Santiago-Miranda was caught repeatedly engaging in lawless, deceptive, and violent behavior unbecoming of an officer of the law (or any person), including threatening the life of a man with whom he believed his wife was having an affair, deflating his wife's vehicle's tires and defacing his wife's home and property, making false 9-1-1 calls and police reports, and being charged with Battery/Domestic Violence in violation of F.S.S. 784.03 and Child Neglect in violation of F.S.S. 827.03(3)(a), after eyewitness statements indicated he grabbed his wife by the hair, held her hands behind her back, banged her head against a wall, and choked her until she could not breath—all in front of his and his wife's daughter, who was a minor.

109.    The Brevard County Sheriff's Office knew or should have known of these criminal incidents involving Santiago-Miranda which indicated his unfitness to serve as a Sheriff's Deputy. Nonetheless, the Brevard County Sheriff's Office failed to take the action necessary to protect citizens

like A.J. Crooms from the foreseeable consequences of Santiago-Miranda continuing to serve as a Sheriff's Deputy.

110.    Specifically, Brevard County Sheriff Wayne Ivey, a final policy maker for the Brevard County Sheriff's Office, authorized the retention of Santiago-Miranda as well as placing him back into the field despite his known history of lawlessness and violence.

111.    As such, the Brevard County Sheriff's Office was deliberately indifferent to the fact that Santiago-Miranda was unfit to serve as a sheriff's deputy and carry a weapon in that capacity, and that he would expose citizens like A.J. Crooms to an unreasonable risk of the violation of their constitutional rights.

112.    As a direct and proximate result of final policymaker Sheriff Ivey's actions and omissions, A.J. Crooms was shot, suffered severe pain and suffering and emotional distress, and died.

113.    As a direct and proximate result, Mr. Crooms' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

114.    The Brevard County Sheriff's Office acted under the color of state law to deprive A.J. Crooms of his rights under the U.S. Constitution. As such, the Brevard County Sheriff's Office has violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Veronica Baxter, as impending Administrator of the Estate of Angelo J. Crooms, demands judgment against Defendant Brevard County Sheriff's Office for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 6
### Negligent Hiring
### (Veronica Baxter on Behalf of A.J. Crooms Against Brevard County Sheriff's Office)

115.    Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

116.    Prior to hiring Defendant Santiago-Miranda, the Brevard County Sheriff's Office knew or should have known that Santiago-Miranda had been charged or convicted in or around 2008 of serious and violent offenses, including Burglary to a Dwelling Unarmed in violation of F.S.S. 810.02 (3A) and Aggravated Assault with a Firearm in violation of F.S.S. 784.021 (1A).

117.    As such, prior to hiring Defendant Santiago-Miranda, the Brevard County Sheriff's Office knew or should have known that Santiago-Miranda was unfit to serve as a sheriff's deputy and carry a weapon in that capacity, and that he would expose citizens like A.J. Crooms to an unreasonable risk of harm.

118.    The Brevard County Sheriff's Office had a duty to employ deputies who were fit for service and who would not foreseeably and wrongfully cause harm to citizens like A.J. Crooms.

119.    The Brevard County Sheriff's Office breached that duty when it hired Santiago-Miranda.

120.    As a direct and proximate result, A.J. Crooms was shot, suffered severe pain and suffering and emotional distress, and died.

121.    As a direct and proximate result, Mr. Crooms' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

WHEREFORE, Plaintiff Veronica Baxter, as impending Administrator of the Estate of Angelo J. Crooms, demands judgment against Defendant Brevard County Sheriff's Office for

compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 7
### Negligent Retention
### (Veronica Baxter on Behalf of A.J. Crooms Against Brevard County Sheriff's Office)

122.    Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

123.    While a Brevard County Sheriff's Deputy in 2019 and 2020, Defendant Santiago-Miranda was caught repeatedly engaging in lawless, deceptive, and violent behavior unbecoming of an officer of the law (or any person), including threatening the life of a man with whom he believed his wife was having an affair, deflating his wife's vehicle's tires and defacing his wife's home and property, making false 9-1-1 calls and police reports, and being charged with Battery/Domestic Violence in violation of F.S.S. 784.03 and Child Neglect in violation of F.S.S. 827.03(3)(a), after eyewitness statements indicated he grabbed his wife by the hair, held her hands behind her back, banged her head against a wall, and choked her until she could not breath—all in front of his and his wife's daughter, who was a minor.

124.    The Brevard County Sheriff's Office knew or should have known of these criminal incidents involving Santiago-Miranda which indicated his unfitness to serve as a sheriff's deputy. Nonetheless, the Brevard County Sheriff's Office failed to take the action necessary to protect citizens like A.J. Crooms from the foreseeable consequences of Santiago-Miranda continuing to serve as a sheriff's deputy.

125.    The Brevard County Sheriff's Office had a duty not to retain deputies like Santiago-Miranda, who had repeatedly shown that they were unfit for service., and expose citizens like A.J. Crooms to such unfitness.

126.    The Brevard County Sheriff's Office breached that duty when it retained and placed Santiago-Miranda armed on the streets of Brevard County, despite his criminal history and demonstrated violent tendencies over the course of more than a decade and as recently as a few months before killing A.J. Crooms and Sincere Pierce.

127.    As a direct and proximate result, A. J. Crooms was shot, suffered severe pain and suffering and emotional distress, and died.

128.    As a direct and proximate result, Mr. Crooms' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

WHEREFORE, Plaintiff Veronica Baxter, as impending Administrator of the Estate of Angelo J. Crooms, demands judgment against Defendant Brevard County Sheriff's Office for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 8
### 42 U.S.C. § 1983 — Fourth Amendment and Fourteenth Amendment
### (Al-Quan Pierce on Behalf of Sincere Pierce Against Jafet Santiago-Miranda)

129.    Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

130.    The conduct of Deputy Santiago-Miranda constituted excessive force in violation of the U.S. Constitution.

131.    At all material times, Deputy Santiago-Miranda was acting under the color of state law as an agent and employee of the Brevard County Sheriff's Office.

132.    At all material times, Deputy Santiago-Miranda was wearing his official Brevard County Sheriff's Office uniform and was acting in the course and scope of his duties as a Brevard County Sheriff's Deputy at the time he shot and killed Sincere Pierce.

133. At all material times, Deputy Santiago-Miranda had no reason to believe that he was in imminent danger or fear of imminent bodily harm from Decedents' vehicle or for any other reason.

134. Every reasonable officer would have known that using deadly force on a vehicle slowly driving away and posing no threat of harm to anyone constitutes excessive force in violation of the Fourth Amendment of the U.S. Constitution.

135. Every reasonable officer would have known that failing to render emergency aid to someone who poses no threat of harm and on whom the officer used lethal force violates the Fourth and Fourteenth Amendments of the U.S. Constitution.

136. Deputy Santiago-Miranda's conduct was objectively unreasonable.

137. As a result of Deputy Santiago-Miranda's excessive and unjustified use of force, 18-year old Sincere Pierce was shot, experienced severe pain and suffering and emotional distress, and died.

138. As a direct and proximate result of the excessive and unjustified use of force, Mr. Pierce's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

139. The acts and omissions of Deputy Santiago-Miranda were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of Sincere Pierce.

WHEREFORE, Plaintiff Al-Quan Pierce, as impending Administrator of the Estate of Sincere Pierce, demands judgment against Defendant Jafet Santiago-Miranda for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 9
## Common Law Battery
### (Al-Quan Pierce on Behalf of Sincere Pierce Against Jafet Santiago-Miranda)

140.     Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

141.     Defendant Santiago-Miranda's conduct resulted in a harmful or offensive contact with Sincere Pierce's person.

142.     Defendant Santiago-Miranda's harmful or offensive contact with Sincere Pierce was intentional.

143.     Defendant Santiago-Miranda's harmful or offensive contact with Sincere Pierce was unjustified, unpermitted, and made without Sincere Pierce's consent.

144.     As a result of Defendant Santiago-Miranda's harmful or offensive contact with Sincere Pierce, Sincere Pierce was shot, experienced severe pain and suffering and emotional distress, and died.

145.     As a direct and proximate result of the excessive and unjustified use of force, Mr. Pierce's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

146.     The acts and omissions of Defendant Santiago-Miranda were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of Sincere Pierce.

WHEREFORE, Plaintiff Al-Quan Pierce, as impending Administrator of the Estate of Sincere Pierce, demands judgment against Defendant Jafet Santiago-Miranda for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 10
### 42 U.S.C. § 1983 — Fourth Amendment and Fourteenth Amendment
### (Al-Quan Pierce on Behalf of Sincere Pierce Against Carson Hendren)

147.    Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

148.    The conduct of Deputy Carson Hendren violated the U.S. Constitution.

149.    At all material times, Deputy Hendren was acting under the color of state law as an agent and employee of the Brevard County Sheriff's Office.

150.    At all material times, Deputy Hendren was wearing her official Brevard County Sheriff's Office uniform and was acting in the course and scope of her duties as a Brevard County Sheriff's Deputy at the time she stood by while Santiago-Miranda shot and killed Sincere Pierce.

151.    At all material times, Deputy Hendren had no reason to believe that she or Santiago-Miranda were in imminent danger or fear of imminent bodily harm from Decedents' vehicle or for any other reason.

152.    Every reasonable officer would have known that using deadly force on a vehicle slowly driving away and posing no threat of harm to anyone constitutes excessive force in violation of the U.S. Constitution.

153.    Every reasonable officer would have known that failing to intervene with respect to her fellow officer's use of deadly force on a vehicle slowly driving away and posing no threat of harm to anyone violates the U.S. Constitution

154.    Deputy Hendren recognized that the force threatened and being used by Santiago-Miranda was excessive and unreasonable under the circumstances.

155.    Deputy Hendren observed and was in a position to intervene to stop Santiago-Miranda's use of excessive and unreasonable deadly force against Sincere Pierce.

156.     Every reasonable officer would have known that failing to render emergency aid to someone who poses no threat of harm and on whom her fellow officer used lethal force violates the Fourth and Fourteenth Amendments of the U.S. Constitution.

157.     Deputy Hendren's conduct was objectively unreasonable.

158.     As a result of Deputy Hendren's conduct, 18-year old Sincere Pierce was shot, experienced severe pain and suffering and emotional distress, and died.

159.     As a direct and proximate result of these wrongful acts and omissions, Mr. Pierce's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

160.     The acts and omissions of Deputy Hendren were intentional, wanton, malicious, reckless, oppressive, and/or showed callous indifference to the federally protected rights of Sincere Pierce.

WHEREFORE, Plaintiff Al-Quan Pierce, as impending Administrator of the Estate of Sincere Pierce, demands judgment against Defendant Carson Hendren for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 11
### 42 U.S.C. § 1983 (*Monell*) — Deliberate Indifference in Training
### (Al-Quan Pierce on Behalf of Sincere Pierce Against Brevard County Sheriff's Office)

161.     Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

162.     The Brevard County Sheriff's Office inadequately trained Deputy Santiago-Miranda such that he was utterly incapable of performing the job of a Sheriff's Deputy on November 13, 2020, including by following and attempting to seize Decedents' vehicle when it had exhibited no reason for

such seizure and then shooting and killing A.J. Crooms and Sincere Pierce despite the fact that they posed no threat to Santiago-Miranda or anyone else at any time.

163.    The Brevard County Sheriff's Office inadequately trained Deputy Hendren such that she was utterly incapable of performing the job of a Sheriff's Deputy on November 13, 2020, including by following and attempting to seize Decedents' vehicle when it had exhibited no reason for such seizure and then standing by and doing nothing while Santiago-Miranda shot and killed A.J. Crooms and Sincere Pierce despite the fact that they posed no threat to Santiago-Miranda or anyone else at any time.

164.    The Brevard County Sheriff's Office has a policy, pattern, and practice of inadequately training sheriff's deputies to perform the job, including by inadequately training them on proper use of force. Indeed, the Brevard County Sheriff's Office's use of force policy did not require Deputy Santiago-Miranda to use other reasonable means of defense short of deadly force, including moving out of the path of the vehicle. Further, the Brevard County Sheriff's Office does not train deputies, and did not train Deputy Santiago-Miranda, to use other means of defense, including moving out of the path of the vehicle, before using deadly force on the occupants of a moving vehicle. Accordingly, the Brevard County Sheriff's Office's policy and training calls for deadly force on the occupants of moving vehicles even when deputies can move out of the way of the vehicle and the vehicle and occupants pose no threat of harm to the deputy or anyone else.

165.    These same training failures explain why Deputy Hendren did nothing to intervene in Santiago-Miranda's use of lethal force when no threat was posed.

166.    The Brevard County Sheriff's Office also has a policy, pattern, and practice of inadequately re-training sheriff's deputies on use of force after they have been placed on administrative leave for exhibiting violent behavior, just as Santiago-Miranda received no such training here.

167.     The Brevard County Sheriff's Office has a history of widespread prior abuse and/or a pattern of prior similar incidents which put it on notice of the need to adequately train on use of force and re-train deputies returning from administrative leave.

168.     The Brevard County Sheriff's Office's failure to adequately train in these respects constituted a deliberate indifference to the constitutional rights of citizens like Sincere Pierce.

169.     As a result of the Brevard County Sheriff's Office's failure to adequately train in these respects, Sincere Pierce was shot, suffered severe pain and suffering and emotional distress, and died.

170.     As a direct and proximate result, Mr. Pierce's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

171.     The Brevard County Sheriff's Office acted under the color of state law to deprive Sincere Pierce of his rights under the U.S. Constitution. As such, the Brevard County Sheriff's Office has violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Al-Quan Pierce, as impending Administrator of the Estate of Sincere Pierce, demands judgment against Defendant Brevard County Sheriff's Office for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 12
### 42 U.S.C. § 1983 (*Monell*) — Deliberate Indifference in Retention
### (Al-Quan Pierce on Behalf of Sincere Pierce Against Brevard County Sheriff's Office)

172.     Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

173.     While a Brevard County Sheriff's Deputy in 2019 and 2020, Defendant Santiago-Miranda was caught repeatedly engaging in lawless, deceptive, and violent behavior unbecoming of an officer of the law (or any person), including threatening the life of a man with whom he believed his

wife was having an affair, deflating his wife's vehicle's tires and defacing his wife's home and property, making false 9-1-1 calls and police reports, and being charged with Battery/Domestic Violence in violation of F.S.S. 784.03 and Child Neglect in violation of F.S.S. 827.03(3)(a), after eyewitness statements indicated he grabbed his wife by the hair, held her hands behind her back, banged her head against a wall, and choked her until she could not breath—all in front of his and his wife's daughter, who was a minor.

174.   The Brevard County Sheriff's Office knew or should have known of these criminal incidents involving Santiago-Miranda which indicated his unfitness to serve as a sheriff's deputy. Nonetheless, the Brevard County Sheriff's Office failed to take the action necessary to protect citizens like Sincere Pierce from the foreseeable consequences of Santiago-Miranda continuing to serve as a sheriff's deputy.

175.   Specifically, Brevard County Sheriff Wayne Ivey, a final policy maker for the Brevard County Sheriff's Office, authorized retention of Santiago-Miranda and placing him back into the field despite his known history of lawlessness and violence.

176.   As such, the Brevard County Sheriff's Department was deliberately indifferent to the fact that Santiago-Miranda was unfit to serve as a sheriff's deputy and carry a weapon in that capacity, and that he would expose citizens like Sincere Pierce to an unreasonable risk of the violation of their constitutional rights.

177.   As a direct and proximate result of final policymaker Sheriff Ivey's actions and omissions, Sincere Pierce was shot, suffered severe pain and suffering and emotional distress, and died.

178.   As a direct and proximate result, Mr. Pierce's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

179.    The Brevard County Sheriff's Office acted under the color of state law to deprive Sincere Pierce of his rights under the U.S. Constitution. As such, the Brevard County Sheriff's Office has violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Al-Quan Pierce, as impending Administrator of the Estate of Sincere Pierce, demands judgment against Defendant Brevard County Sheriff's Office for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

**COUNT 13**
**Negligent Hiring**
**(Al-Quan Pierce on Behalf of Sincere Pierce Against Brevard County Sheriff's Office)**

180.    Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

181.    Prior to hiring Defendant Santiago-Miranda, the Brevard County Sheriff's Office knew or should have known that Santiago-Miranda had been charged or convicted in or around 2008 of serious and violent offenses, including Burglary to a Dwelling Unarmed in violation of F.S.S. 810.02 (3A) and Aggravated Assault with a Firearm in violation of F.S.S. 784.021 (1A).

182.    As such, prior to hiring Defendant Santiago-Miranda, the Brevard County Sheriff's Office knew or should have known that Santiago-Miranda was unfit to serve as a sheriff's deputy and carry a weapon in that capacity, and that he would expose citizens like Sincere Pierce to an unreasonable risk of harm.

183.    The Brevard County Sheriff's Office had a duty to employ deputies who were fit for service and who would not foreseeably and wrongfully cause harm to citizens like Sincere Pierce.

184.    The Brevard County Sheriff's Office breached that duty when it hired Santiago-Miranda.

185.    As a direct and proximate result, Sincere Pierce was shot, suffered severe pain and suffering and emotional distress, and died.

186.    As a direct and proximate result, Mr. Pierce's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

WHEREFORE, Plaintiff Al-Quan Pierce, as impending Administrator of the Estate of Sincere Pierce, demands judgment against Defendant Brevard County Sheriff's Office for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

### COUNT 14
### Negligent Retention
### (Al-Quan Pierce on Behalf of Sincere Pierce Against Brevard County Sheriff's Office)

187.    Plaintiff incorporates the allegations in paragraphs 1 through 64 as if fully restated here.

188.    While a Brevard County Sheriff's Deputy in 2019 and 2020, Defendant Santiago-Miranda was caught repeatedly engaging in lawless, deceptive, and violent behavior unbecoming of an officer of the law (or any person), including threatening the life of a man with whom he believed his wife was having an affair, deflating his wife's vehicle's tires and defacing his wife's home and property, making false 9-1-1 calls and police reports, and being charged with Battery/Domestic Violence in violation of F.S.S. 784.03 and Child Neglect in violation of F.S.S. 827.03(3)(a), after eyewitness statements indicated he grabbed his wife by the hair, held her hands behind her back, banged her head against a wall, and choked her until she could not breath—all in front of his and his wife's daughter, who was a minor.

189.    The Brevard County Sheriff's Office knew or should have known of these criminal incidents involving Santiago-Miranda which indicated his unfitness to serve as a Sheriff's Deputy.

Nonetheless, the Brevard County Sheriff's Office failed to take the action necessary to protect citizens like Sincere Pierce from the foreseeable consequences of Santiago-Miranda continuing to serve as a Sheriff's Deputy.

190.    The Brevard County Sheriff's Office had a duty not to retain deputies like Santiago-Miranda, who had repeatedly shown that they were unfit for service, and expose citizens like Sincere Pierce to such unfitness.

191.    The Brevard County Sheriff's Office breached that duty when it retained and placed Santiago-Miranda armed on the streets of Brevard County, despite his criminal history and demonstrated violent tendencies over the course of more than a decade and as recently as a few months before killing A.J. Crooms and Sincere Pierce.

192.    As a direct and proximate result, Sincere Pierce was shot, suffered severe pain and suffering and emotional distress, and died.

193.    As a direct and proximate result, Mr. Pierce's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

WHEREFORE, Plaintiff Al-Quan Pierce, as impending Administrator of the Estate of Sincere Pierce, demands judgment against Defendant Brevard County Sheriff's Office for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims herein.

Dated: April 22, 2021

Veronica Baxter, as Administrator of the
Estate of Angelo J. Crooms, Deceased; and
Al-Quan Pierce, as Administrator of the
Estate of Sincere Pierce, Deceased

By:   /s/   *Ben Crump*
        Ben Crump

Ben Crump
BEN CRUMP LAW
122 S. Calhoun Street
Tallahassee, Florida 32301
(800) 713-1222
ben@bencrump.com

Natalie Jackson
THE LAW OFFICE OF NATALIE JACKSON
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
(407) 437-9295
natalie@nataliejacksonlaw.com

Steven Hart*
Brian Eldridge*
John Marrese*
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Washington Street, Suite 1600
Chicago, Illinois 60602
(312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com

*Attorneys for Plaintiffs*

* Pending Special Admission